**FILED**

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

DEC 1 7 2010

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re:

CELEBRITY RESORTS, LLC, *et al.*,

      Debtors.

_____/

NEIL S. MEYERS,

      Plaintiff,

v.

JARED M. MEYERS, *et al.*,

      Defendants.

_____/

Case No. 6:10-bk-03550-ABB
Chapter 11

(Jointly administered with Case
Nos. 6:10-bk-03551-ABB to
6:10-bk-03585-ABB)

Adv. Pro. No. 6:10-ap-00178-ABB

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on the First Amended Complaint for Declaratory Judgment and Injunctive Relief (Doc. No. 3) filed by Plaintiff Neil Meyers ("Plaintiff") against Defendants Jared Meyers ("Jared") and Celebrity Resorts, LLC, *et al.*, the thirty-six Debtor-in-Possession entities (collectively, "Debtors"), seeking: (i) a declaratory judgment Plaintiff is the owner of the Debtors; and (ii) the issuance of an injunction prohibiting Jared from exercising control over the Debtors.[1]  The final evidentiary hearing was held on December 2 and December 3, 2010 at which the parties and their respective counsel appeared.  The parties submitted post-hearing briefs pursuant to the Court's directive.

---

[1] Debtors filed Counterclaims against Plaintiff (Doc. No. 90).  A status hearing on the Counterclaims has been set for December 22, 2010 at 10:00 a.m.

Judgment is due to be entered in favor of Defendants and against Plaintiff on the First Amended Complaint for the reasons set forth herein. The Court makes the following findings and conclusions after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

*Synopsis*

Plaintiff and his brother Hillel Meyers began developing timeshare properties in Florida in the early 1980s and worked together for thirty years. Their timeshare enterprise was comprised of various entities, with revenue produced primarily by three facets: sales and rentals of timeshare units, mortgage portfolios for financed units, and management fees.

Plaintiff has three sons: Jared age 34, Derek Meyers age 29, and Dylan Meyers age 17. Jared graduated from college in 1998 and went to work for Plaintiff and Hillel. Plaintiff and Hillel had a falling out and partitioned the timeshare business in 2003. Plaintiff continued to operate the portion of the business he acquired in the partition and Jared worked with him. Jared eventually became the CEO of the business and has managed it, including all of the day-to-day operations, for several years.

Since 2003, various components of the timeshare business were renamed, new entities were acquired and created, and ownership interests were transferred. These events and transactions were not always formally or timely documented. The central issue of this adversary proceeding is who owned the core entities of the business, which are the Debtors in the bankruptcy cases, on the Petition Date of March 5, 2010.[2]

---

[2] The Debtor entities are (having Case Nos. 6:10-bk-03550-ABB through and including 6:10-bk-03585-ABB): Celebrity Resorts, LLC; Celebrity Resorts of Brigantine Beach, LLC; Celebrity Resorts of Indian Shores, LLC; Celebrity Resorts of Kauai, LLC; Celebrity Resorts of Lake Buena Vista, LLC; Celebrity

Jared asserts he solely owns the Debtors. Plaintiff asserts he is the sole owner of

the Debtors. Defendants constitute interested persons who will be affected by the

outcome of this proceeding. Defendants have standing to defend against Plaintiff's

claims and to assert the existence of the Trusts.

The documentary and testimonial evidence establish Jared is the owner of the

Debtors and he was authorized to institute the Debtors' bankruptcy cases. Judgment is

due to be awarded in favor of Jared.

### Early Events

Jared, in 2001, incorporated two Florida corporations which he owned

individually: (i) Celebrity Resorts, Inc.; and (ii) Celebrity Resorts Management Services,

Inc.[3] Plaintiff created Florida Property Development Corporation, LLC, a Florida limited

liability company, in 2001.[4] Plaintiff, as part of the asset partition with his brother,

obtained ownership of First Continental Corporation ("FCC"), a Florida corporation,

---

Resorts of Orlando, LLC; Celebrity Resorts of Palm Coast, LLC; Celebrity Resorts of Reno, LLC; Celebrity Resorts of Steamboat Springs, LLC; Celebrity Resorts of Steamboat Springs-Hilltop, LLC; Celebrity Resorts Management Services, LLC; Celebrity Resorts Management, LLC; Celebrity Resorts of Clearwater Management Company, LLC; Celebrity Resorts of Colorado Management Company, LLC; Celebrity Resorts of Florida Management Company, LLC; Celebrity Resorts of Genoa, LLC; Celebrity Resorts of Hanalei Management Company, LLC; Celebrity Resorts of Hawley, LLC; Celebrity Resorts of Kauai Management Company, LLC; Celebrity Resorts of Las Vegas Management Company, LLC; Celebrity Resorts of Nevada Genoa Management Company, LLC; Celebrity Resorts of Nevada Management Company, LLC; Celebrity Resorts of New Jersey Management Company, LLC; Celebrity Resorts Connections, LLC; Celebrity Resorts Holding Company, LLC; Celebrity Resorts Reservations, LLC; Celebrity Resorts Sales & Marketing, LLC; Hilltop Bar & Grill, LLC; Lucky Duck Café, LLC; Optima Financial Services, LLC; The Club of Celebrity Resorts, LLC; Venezia CE, LLC; Celebrity Resorts International Management Services, LLC; Celebrity Resorts International, LP; Celebrity Resorts Management Services, Inc.; Celebrity Resorts, Inc.

[3] Ds' Exs. 29, 30. The corporation was originally named "Commercial Laundry Services, Inc." and went through a series of name changes from 2001 to 2004 resulting in the name "Celebrity Resorts Management Services, Inc." in May 2004 (Ds' Ex. 30). It was alleged Plaintiff acquired an ownership interest in this entity in 2005. It is unclear whether Plaintiff acquired any ownership interest in this entity.

[4] D's Ex. 34.

which purchased, developed, sold, and leased timeshare units. Defendants' Exhibit 38 is a chart setting forth the various entities owned by Jared and those owned by Plaintiff from 2001 through the third quarter of 2003.

### 2003 Leisure Transactions

Jared, in 2003, was the CEO and President of FCC and was contacted by an agent of C. Alan Bentley ("Leisure Trustee"), who was the Chapter 11 Trustee of the bankruptcy estates of Leisure Homes Corporation, *et al.* (the "Leisure Bankruptcy"), regarding the potential purchase of timeshare resorts. The resorts were located throughout the United States. Jared desired to grow the timeshare business and he and Plaintiff agreed to purchase the Leisure resorts.

In November 2003, Jared, Plaintiff, and FCC formed thirteen new entities to purchase and manage the six properties acquired through from the Leisure Bankruptcy. The following entities were created to hold the real property:

    (i)      Celebrity Resorts of Indian Shores, LLC;

    (ii)     Celebrity Resorts of New Jersey, LLC, n/k/a Celebrity Resorts of Brigantine Beach, LLC;

    (iii)    Celebrity Resorts of Hilltop, LLC, a/k/a Celebrity Resorts of Steamboat Springs-Hilltop, LLC;

    (iv)    Celebrity Resorts of Steamboat Suites, LLC, a/k/a Celebrity Resorts of Steamboat Springs, LLC; and

    (v)     Celebrity Resorts of Nevada, LLC, n/k/a Celebrity Resorts of Reno, LLC; and

    (vi)    Celebrity Resorts of Hawaii, LLC.

4

Celebrity Resorts, LLC ("CR LLC") was formed to be the owner of the membership interests in these six limited liability companies and has been the owner from November 2003 through the Petition Date.[5]

The following entities were created to manage the real property purchased from the Leisure Bankruptcy:

<table>
<tr><td>(i)</td><td>Celebrity Resorts of Florida Management Company, LLC, f/k/a Celebrity Resorts of Indian Shores Management Company, LLC;</td></tr>
<tr><td>(ii)</td><td>Celebrity Resorts of Nevada Management Company, LLC;</td></tr>
<tr><td>(iii)</td><td>Celebrity Resorts of New Jersey Management Company, LLC;</td></tr>
<tr><td>(iv)</td><td>Celebrity Resorts of Colorado Management Company, LLC; and</td></tr>
<tr><td>(v)</td><td>Celebrity Resorts of Hawaii Management Company, LLC.[6]</td></tr>
</table>

Celebrity Resorts Management, LLC ("CRM LLC") was formed to be the owner of the membership interests in these five limited liability companies and, in fact, has been the owner from November 2003 through the Petition Date.

The Leisure Purchase was consummated in November 2003 and is documented through various deeds executed by the Leisure Trustee.[7]

***CR LLC and CRM LLC ownership:*** The membership interests in CR LLC and CRM LLC were owned by Jared (33%), the Derek Meyers Trust (33%), the Dylan Meyers Trust (33%), and FCC (1%) (the Derek Meyers Trust and the Dylan Meyers

---

[5] Ds' Exs. 2, 3, 8, 9, 11, 39, 40, 41, 42, 43, 44. Neither Celebrity Resorts of Hawaii, LLC, nor Celebrity Resorts Hawaii Management Company, LLC are debtors in these bankruptcy cases, or defendants in this adversary proceeding.

[6] Ds' Exs. 12, 14, 21, 22, 33.

[7] Ds' Exs. 39, 40, 41, 42, 43, 44.

Trust, shall collectively be referred to as the "Trusts") from November 2003 through January 2005, as set forth in numerous tax returns, personal financial statements, and organizational documents.[8] Plaintiff did not own any membership interest in CR LLC or CRM LLC. From November 2003 to January 2005, FCC was the managing member of CR LLC and CRM LLC. Plaintiff did not own or control any of the entities created as part of the Leisure Purchase.

*Plaintiff's Position:* Plaintiff disputes the Leisure Purchase occurred as reflected in the tax returns, personal financial statements, and organizational documents. Plaintiff asserts he is the sole owner of all thirteen new entities because: (i) the bid to purchase the entities from the Leisure Bankruptcy was submitted in FCC's name; (ii) the funds used to make the bid deposit came from FCC; (iii) there are no Trusts; and (iv) he owned all the new entities by virtue of his ownership of FCC. His testimony was not credible and his assertions are without merit.[9]

Deeds were executed conveying the Leisure assets from the Leisure Trustee to the newly formed Celebrity Resorts entities—not to Plaintiff or to FCC.[10] Although the bid may have denoted Celebrity Resorts as a "nominee" of FCC rather than as "purchaser," this nomenclature is of no effect. The assets were transferred to the new Celebrity Resorts entities. FCC's providing of the bid deposit funds did not give FCC an ownership interest in the Celebrity Resorts entities.

---

[8] Ds' Exs. 45, 46, 47, 49, 50, 51 (*see also* Ex. 38 which is a chart setting forth the ownership structure during the fourth quarter of 2003).

[9] The parties both lacked credibility when examined by opposing counsel in this proceeding. Plaintiff and Jared were non-responsive to opposing counsel in some instances. Jared's testimony was generally consistent with the documentary evidence, based upon the Court's review of the evidence.

[10] Ds' Exs. 38, 39, 40, 41, 42, 43, 44.

The funds for the bid deposit were a loan which was repaid by the new Celebrity Resorts entities according to Jared's testimony and the accounting records. Jared's testimony on this issue was credible. Plaintiff presented no evidence contradicting the accounting records. There is no evidence FCC was purchasing equity in the new entities. Neither FCC nor Plaintiff obtained any ownership interest in the Celebrity Resorts entities.

Plaintiff's personal tax returns contradict his ownership assertions. Plaintiff's personal tax returns contain no accountings for any ownership or income in any of the Debtors for any time period.[11]  Plaintiff claims to have amended these tax returns to reflect his ownership interests, but did not introduce any amended tax returns into evidence.

**_The Trusts:_**  No written trust agreements for the Trusts were introduced as evidence. Jared has not seen or been presented with any written trust agreement for the Trusts. Plaintiff asserts no written trust agreements were created for the Trusts and, as a result, no trusts exist.

There is ample documentary evidence manifesting Plaintiff's intent to create the Trusts, and the identification of the _res_ of the Trusts. Plaintiff's ongoing course of conduct reflects he intended to create the Trusts and he believed Trusts existed. Plaintiff executed tax returns on behalf of the Trusts, applied for employer identification numbers

---

[11] Ds' Exs. 45, 53, 63.

on behalf of the Trusts, made representations in loan documents attesting to the existence

of the Trusts, and engaged in correspondence confirming the existence of the Trusts.[12]

### 2004 Transactions

In 2004, fourteen new legal entities were created as part of the "Celebrity

Resorts" family of companies. These entities include the following Debtors:

(i)      Celebrity Resorts Management Services, LLC, which was member managed by FCC until 2006 when Celebrity Resorts International, LP, acquired the membership interests[13];

(ii)     Celebrity Resorts Connections, LLC, which was member managed by Celebrity Resorts Management Services, LLC until Celebrity Resorts Holding Company, LLC acquired the membership interests in 2009[14];

(iii)    Celebrity Resorts Reservations, LLC, which was member managed by Celebrity Resorts Management Services, LLC until Celebrity Resorts Holding Company, LLC acquired the membership interests in 2009[15];

(iv)     Optima Financial Services, LLC, which was member managed by Celebrity Resorts Management Services, LLC until Celebrity Financial Services, LLC acquired the membership interests in 2009[16]; and

(v)      Celebrity Resorts Holding Company, LLC, which was member managed by Jared until CR LLC acquired the membership interests in 2005, and then Celebrity Resorts International, LP when it acquired the membership interest in 2006.[17]

Plaintiff did not and does not own or control any of these entities.

---

[12] Ds' Exs. 49, 50, 54, 55, 56, 57, 64, 65, 83, 96, 97, 101, 102, 104, 111, 112, 117, 118, 121, 122. Plaintiff executed loan documents (Ds' Ex. 112 at CRI 00003232) stating: "Neil Meyers is the sole trustee of the Derek Meyers Trust and the Dylan Meyers Trust."

[13] Ds' Ex. 11.

[14] Ds' Ex. 23

[15] Ds' Ex. 24

[16] Ds' Ex. 27

[17] Ds' Ex. 32.

*2005 Events*

### *The FCC 1% Interest Sale*:

Celebrity Resorts International, LP ("CRI"), a Nevada limited partnership, and Celebrity Resorts International Management Services, LLC ("CRIMS"), a Nevada limited liability company, were formed in 2005 to: (i) purchase FCC's one percent (1%) membership interest in CR LLC and CRM LLC; and (ii) to hold, along with Jared, the Derek Meyers Trust, and the Dylan Meyers Trust, the membership interests in CR LLC, CRM LLC, Celebrity Resorts Management Services, LLC, Celebrity Resorts Holding Company, LLC, and the twenty-seven "downstream" "Celebrity Resorts" entities.[18]

FCC, on December 31, 2005, sold its one percent (1%) membership interest in CR LLC and CRM LLC for $10,000.00, as set forth in Schedule D of FCC's 2005 U.S. Income Tax Return for an S Corporation.[19]

CRIMS, the General Partner of CRI, as a result of this sale transaction and as reflected in the applicable tax returns, owned one percent (1%) of the partnership interests in CRI.[20] Jared, the Derek Meyers Trust, and the Dylan Meyers Trust each owned thirty-three percent (33%) of the remaining partnership interests in CRI.[21] Jared, the Derek Meyers Trust, and the Dylan Meyers Trust, each owned thirty-three and one-third percent of the membership interests of CRIMS.[22] FCC was no longer an owner of any interest in any of the Celebrity Resort entities.

---

[18] Ds' Exs. 36, 37, 52, 53, 54, 55, 60.
[19] Ds' Ex. 60.
[20] Ds' Exs. 36, 54, 55.
[21] Id.
[22] Id.

9

Plaintiff disputes the FCC sale transaction took place on the premise there are no Trusts. Plaintiff admitted to executing the limited partnership agreement for CRI and the operating agreement for CRIMS setting forth the above-described ownership interests.[23] Plaintiff, as he has asserted throughout this proceeding regarding any document he executed, claims to have not read either organizational document, or even the signature blocks setting forth he was signing on behalf of the Trusts.

Plaintiff's assertions he did not read the documents he executed are not credible. Plaintiff is a highly sophisticated businessman who can recite from memory minute details regarding his asset holdings, the zoning designation of each parcel of real property, and how many timeshare units can be built on each parcel. It is not credible Plaintiff did not read or comprehend the documents he executed. The Limited Partnership Agreement for CRI and the Operating Agreement for CRIMS were validly executed and approved by the entities' members.

### 2006 Transactions

**Changes to existing companies:** Plaintiff, in December 2006, changed the name of Florida Property Development, LLC to Celebrity Resorts Sales & Marketing, LLC and appointed Celebrity Resorts Management Services, LLC as the Manager.[24]

FCC, on December 28, 2006, converted to a Florida limited liability company and changed its name to Celebrity Resorts of Orlando, LLC pursuant to the Joint Shareholder's and Directors' Action by Written Consent executed by Plaintiff as the sole shareholder and by Jared and Plaintiff as directors.[25]

---

[23] Ds' Exs. 36, 37.
[24] Ds' Ex. 34.
[25] Ds' Ex. 82.

10

Celebrity Resorts Management Services, LLC acquired all of the Lucky Duck Café's membership interest in the Hilltop Bar & Grill, LLC effective January 1, 2006.[26] This membership interest was transferred to Celebrity Resorts Holdings Company in 2008.[27] Plaintiff no longer had any ownership interest in this entity after January 2006.

*New entities:* Seven new legal entities were created in 2006 as part of the "Celebrity Resorts" family of companies. The Club of Celebrity Resorts, LLC (a Debtor), which was member managed by Celebrity Resorts Management Services, LLC, was formed.[28]

## 2007 Events

### New Entities:

Eleven new entities were created in 2007 as part of the "Celebrity Resorts" family of companies. These entities include the following Debtors:

   (i)     Celebrity Resorts of Clearwater Management Company, LLC, which was member managed by Celebrity Resorts Holding Company, LLC up through and including the Petition Date[29];

   (ii)    Celebrity Resorts of Las Vegas Management Company, LLC, which was member managed by Celebrity Resorts Holding Company, LLC up through and including the Petition Date[30]; and

   (iii)   Venezia CE, LLC, which was member managed by Celebrity Resorts Holding Company, LLC up through and including the Petition Date.[31]

Plaintiff did not and does not own or control any of these entities.

---

[26] Ds' Ex. 25.
[27] Id.
[28] Ds' Ex. 35.
[29] Ds' Ex. 13.
[30] Ds' Ex. 19.
[31] Ds' Ex. 28.

*Purchases of Membership Interests:*

*CR LLC $6,048,461.00 Purchase:*    CR LLC purchased from Plaintiff one hundred percent of the issued and outstanding membership interests in each of the following Florida limited liability companies for $6,048,461.00: (i) Celebrity Resorts of Lake Buena Vista, LLC; (ii) Celebrity Resorts of Orlando, LLC, f/k/a FCC; and (iii) Celebrity Resorts of Palm Coast, LLC.[32] The purchase was effective January 1, 2007.

Plaintiff executed a Purchase Agreement for Membership Interests in Florida Limited Liability Companies and an Assignment of Membership Interests Including All Membership Rights and Liabilities documenting this purchase transaction.[33]    Jared, as President of Celebrity Resorts International Enterprises, Inc. (the Manager of    the purchaser CR LLC), executed a Promissory Note on January 1, 2007 in the amount of $6,048,461.00 payable by Celebrity Resorts, LLC to Plaintiff.[34]

Jared testified Plaintiff accepted payments from the Debtors on the $6,048.461.00 Promissory Note. His testimony was credible and is corroborated by the Debtor's books and records, which set forth such loan payments were made to and accepted by Plaintiff. CR LLC, effective as of January 1, 2007, became the sole member of the three limited liability companies and remained the sole member through the Petition Date.

*Additional CR LLC Purchases:*    CR LLC, pursuant to two executed Purchase Agreements, purchased all of the assets and assumed certain excess liabilities of:  (i) Florida Fun Attractions, Inc. ("Florida Fun"), a Florida corporation owned by Plaintiff;

---

[32] Ds' Exs. 87.
[33] Id.
[34] D's Ex. 87.

12

and (ii) First Jefferson Corporation, a Florida corporation owned by Plaintiff.[35] These purchase transactions were effective as of January 1, 2007. Florida Fun and First Jefferson Corporation were required to pay CR LLC $351,074.00 and $2,847,802.00, respectively, because their liabilities exceeded their assets.[36] Promissory Notes were executed by Florida Fun and First Jefferson Corporation in the amounts of $351,074.00 and $2,847,802.00, respectively, payable to CR LLC.[37] Plaintiff executed a Guarantee of Payment for each transaction pursuant to which he guaranteed payment of the amounts of $351,074.00 and $2,847,802.00.

*Celebrity Resorts Holding Company, LLC:* Celebrity Resorts Holding Company, LLC purchased from Plaintiff one hundred percent of the issued and outstanding membership interests in Lucky Duck Café, LLC ("LDC") for $70,369.00 pursuant to a Purchase Agreement for Membership Interests in Florida Limited Liability Company.[38] The purchase transaction was effective as of January 1, 2007. Plaintiff, pursuant to the Purchase Agreement, was required to pay "the negative purchase price" of $70,369.00 to Celebrity Resorts Holding Company, LLC because LDC's liabilities exceeded its assets.[39] Plaintiff executed a Promissory Note for $70,369.00, with interest at 3.5% per annum, payable to Celebrity Resorts Holding Company, LLC.[40] Celebrity Resorts Holding Company, LLC became the sole member of LDC as of January 1, 2007 and remained such through the Petition Date.

---

[35] Ds' Exs. 89, 90.
[36] Ds' Ex. 89, Asset Purchase Agreement at ¶ 2.3.; Ds' Ex. 90, Asset Purchase Agreement at ¶2.3.
[37] Ds' Exs. 89, 90.
[38] Ds' Exs. 26, 88.
[39] Ds' Ex. 88.
[40] Id.

*Club of Celebrity Resorts, LLC:*  The Club of Celebrity Resorts, LLC purchased for $182,401.00 all the assets of: (i) the Club of the Oaks at Resort World, Inc.; (ii) the Club of the Spas at Resort World, Inc.; and (iii) the Club of the Villas at Resort World, Inc.[41]  The purchase transaction was effective as of January 1, 2007.  This transaction is documented pursuant to an Asset Purchase Agreement and Promissory Note.[42]

Plaintiff, as the sole shareholder of the three entities, executed on November 1, 2006 (prior to the effective date of this purchase transaction) regarding the three entities: Statements of Intent to Dissolve, Notices of Corporate Dissolution, and Articles of Dissolution, with dissolution effective as of December 31, 2006.[43]

*Plaintiff's Position:*  Plaintiff disputes the 2007 purchase transactions.  He presents alternate arguments: (i) He did not read or understand the documents he signed; (ii) there was a failure of consideration for the transfers; (iii) he was defrauded and did not intend to sell his ownership interests in the various entities; and (iv) he thought he was selling one of his companies (FCC) to himself or an entity owned by him.  Plaintiff does not seek rescission of the purchase transactions.

Plaintiff's assertions are contradicted by the transactional documents, documents he executed and filed with the State of Florida, tax returns, financial statements, and Jared's testimony.[44]  Plaintiff's assertion he did not read the documents he signed is not

---

[41] Ds' Ex. 92.

[42] Id.

[43] Ds' Exs. 70, 71, 72, 73, 74, 75, 76, 77, 78.

[44] Plaintiff presented Plaintiff's Ex. 6 in support of his assertion he believed he was selling FCC back to himself or Celebrity Resorts, LLC for purposes of obtaining a loan with Farmington Savings Bank. Plaintiff's Ex. 6 is entitled "Membership Interest Pledge and Security" and purportedly was made between FCC, CR LLC, and CRM LLC. This document is entitled to little weight: (i) it is not an original document; (ii) neither party knew who drafted this document; (iii) various pages contain a "Draft 1/13/92" notation in the upper right-hand corner; (iv) the fonts are inconsistent from page to page; (v) Paragraph

14

credible. The documents and Plaintiff actions reflect a clear intent to proceed with and consummate the purchase transactions.

Plaintiff denies receiving payment on any promissory notes. Jared testified the Debtors have paid almost $2,000,000.00 in cash to or for the benefit of Plaintiff and satisfied an additional $3,000,000.00 of liabilities on behalf of Plaintiff or entities he owns. These payments and transfers are documented in the Debtors' books and records. The Debtors seek recovery of these transfers through their Counterclaims.

The documents relating to the 2007 sale transactions were properly authorized, valid, and caused the transfer of ownership of the aforementioned assets and membership interests.

### *2008 and 2009 Events*

The "Celebrity Resorts" enterprise sought a loan from Farmington Savings Bank ("Farmington") in 2008. A $35,000,000.00 loan was made to the enterprise in August 2008 pursuant to a Receivable Loan Agreement and an Inventory Loan Agreement.[45] Plaintiff and Jared both personally guaranteed the Loan Agreements.[46] Plaintiff was actively involved in the negotiation of the loan and the preparation and execution of the Farmington loan documents. Plaintiff's brother, Steven Meyers, reviewed and revised

---

11(i) is incomplete; and (vi) no "Exhibit A" is attached to the document, which is an instrumental component of the purported Agreement as it is described as delineating ownership interests in various entities.

[45] Ds' Exs. 111, 112.

[46] Id. As part of the loan transaction Farmington required the January 1, 2007 Promissory Note of $6,048.461.00 made pursuant to the FCC sale be voided and a replacement note be issued. Plaintiff executed the Replacement Promissory Note Ratification and endorsed the Replacement Promissory Note made payable to Farmington.

various loan documents including Plaintiff's Guaranty Agreement and Subordination Agreement.[47]

Several more entities were added to the "Celebrity Resorts" enterprise throughout 2008 and 2009 in connection with the Farmington loan, which include the following Debtors:

(i)     Celebrity Resorts of Kauai, LLC, which was member managed by CR LLC up through and including the Petition Date[48];

(ii)    Celebrity Resorts of Genoa, LLC, which was member managed by Celebrity Resorts Holding Company, LLC up through and including the Petition Date[49];

(iii)   Celebrity Resorts of Hanalei Management Company, LLC, which was member managed by Celebrity Resorts of Kauai Management Company, LLC up through and including the Petition Date[50];

(iv)    Celebrity Resorts of Hawley, LLC, which was member managed by Celebrity Resorts Holding Company, LLC up through and including the Petition Date[51];

(v)     Celebrity Resorts of Kauai Management Company, LLC, which was member managed by CRM LLC up through and including the Petition Date[52]; and

(vi)    Celebrity Resorts of Nevada Genoa Management, LLC, which was member managed by Celebrity Resorts of Nevada Management Company, LLC up through and including the Petition Date.[53]

Plaintiff has not had an ownership interest in these entities at any time.

---

[47] Ds' Exs. 141, 144.
[48] Ds' Ex. 4.
[49] Ds' Ex. 15.
[50] Ds' Ex. 16.
[51] Ds' Ex. 17.
[52] Ds' Ex. 18.
[53] Ds' Ex. 20.

*2009 Events*

### *The Capital Calls and Subscription Agreement:*

The "Celebrity Resort" enterprise experienced cash flow problems in late 2008 and early 2009 and funds needed to be raised. The business looked to the partners of CRI and the members of CRIMS for funding. The partners of CRI, pursuant to the 2005 FCC sale transaction, continued to be in January 2009: Jared (33%), the Derek Meyers Trust (33%), the Dylan Meyers Trust (33%), and CRIMS (1%). The members of CRIMS, pursuant to the 2005 FCC sale transaction, continued to be in January 2009: Jared (33 1/3%); the Derek Meyers Trust (33 1/3%); and the Dylan Meyers Trust (33 1/3%).

*CRI Capital Call:* CRI issued a capital call on each partner of CRI on January 5, 2009 in the aggregate amount of $300,000.00, pursuant to §4.6 of the Celebrity Resorts International, LP Agreement of Limited Partnership.[54] Jared complied with the capital call by paying in capital of $99,000.00. The deadline of February 13, 2009 to comply with the capital call was extended at the request of Plaintiff on behalf of the Trusts. The two Trusts failed to comply with the capital call.

CRI agreed to issue additional limited partnership interests and offered the additional subscription to all partners. Jared was the only partner to accept the subscription offer. He purchased a 99.6% Class A Limited Partnership Interest in CRI for $50,000.00.[55] The net result of the capital call and subscription offering was the following ownership interests in CRI: Jared (99.732%); the Derek Meyers Trust (0.132%); the Dylan Meyers Trust (0.132%); and CRIMS (0.004%).[56]

---

[54] Ds' Ex. 36.
[55] Ds' Ex. 36 (Subscription Agreement and Check No. 1003).
[56] Ds' Ex. 36 (Doc. CRI 00000827).

*CRIMS Capital Call:*  CRIMS issued a contribution demand on each member of CRIMS on January 5, 2009 in the aggregate amount of $75,000.00, pursuant to §7.2 of CRIMS' Operating Agreement.[57]  Jared complied with the contribution demand by paying in a contribution of $25,000.00.

The deadline to comply with the contribution demand was extended at the request of Plaintiff on behalf of the Trusts.  The Trusts failed to comply with the contribution demand, which constituted a default pursuant to §7.2 of CRIMS' Operating Agreement. Jared purchased the entire membership interests of the Trusts.[58]  The net result of the contribution demand was that Jared became the 100% owner of CRIMS.[59]

*Plaintiff's Dispute:*  Plaintiff disputes the ownership results of these events and the veracity of most of Defendants' exhibits.  He asserts many of the documents were executed a year or more after the transaction took place and many documents were executed in order to close the Farmington loan.

Many documents were executed after the effective date of the subject transaction. The failure to contemporaneously execute documents for a particular transaction (whether it was an acquisition, a sale, an ownership transfer, a dissolution, *etc.*) was a common practice of this family business.  Farmington, in order to consummate the loan, required the business to have its affairs in proper order.  Some transactions that had taken place needed to be properly documented and various documents were executed post-transaction.  No evidence was presented reflecting the late execution of any document was an attempt to back-date the document or was done for an improper purpose.

---

[57] Ds' Exs. 36, 37.
[58] Ds' Ex. 37.
[59] Ds' Ex. 37 (CRI 00000875).

18

Plaintiff was actively involved in the preparation and execution of the Farmington loan documents and was represented by counsel throughout the transaction. He personally guaranteed the Farmington loan. Plaintiff executed numerous documents. Each document he executed he did so knowingly and willingly. There is no evidence Plaintiff executed any document under duress.

Plaintiff has presented no evidence substantiating his ownership claims. He did not own or control any of the Debtors on the Petition Date. Jared had ownership and control of the Debtors on the Petition Date. Jared authorized each Debtor to file a Chapter 11 voluntary bankruptcy case and executed Written Consents for each Debtor.[60] Jared executed the Debtors' bankruptcy petitions and caused them to be filed. He, as the owner of the Debtors and pursuant to the Debtors' governing documents, was authorized to take such actions. Judgment is due to be entered in favor of Jared and against Plaintiff on the First Amended Complaint.

## CONCLUSIONS OF LAW

Plaintiff asserts he is entitled to: (i) a declaratory judgment finding Plaintiff is the owner of all the Debtors; and (ii) an injunction prohibiting Jared from exercising control over the Debtors because Jared has no authority to control the Debtors. Plaintiff contests Defendants' standing to assert the existence of a trust because Defendants are not parties to either the Dylan Meyers Trust or the Derek Meyers Trust.

*Standing:* Plaintiff relies upon the case *In re The 1031 Tax Group*, 439 B.R. 47 (Bankr. S.D.N.Y. 2010) for its assertion the Defendants may not assert the existence of a

---

[60] Ds' Exs. 2-37.

trust in defense to Plaintiff's claims.[61] The case cited by Plaintiff is not controlling and is inapposite. The *1031 Tax Group* case involved a fraudulent transfer recovery action by a Chapter 11 Trustee against various defendants where they asserted the existence of a trust to defeat the recovery of estate assets, to the detriment of the estate's creditors. There are no factual or legal parallels between the *1031 Tax Group* case and this adversary proceeding. Plaintiff has failed to cite any case precluding a debtor entity from asserting the existence of a trust in defense of its authority to file a bankruptcy petition.

Florida statutory law defines an "interested person" with respect to estates and trusts as: "any person who may reasonably be affected by the outcome of the particular proceeding involved." FLA. STAT. § 731.201(23). The Debtors constitute "interested persons" pursuant to Fla. Stat. Section 731.201(23). They will be affected by the outcome of this proceeding. Defendants have standing to defend against Plaintiff's claims and to assert the existence of the Trusts.

***Plaintiff's Burdens:*** Plaintiff has the burden of proof on his action for declaratory relief. In re Romagnolo, 190 B.R. 946, 947 (Bankr. M.D. 1995). He has the burden to establish his ownership of the Debtors and their purported lack of authority to file for bankruptcy petition. Rachlin Cohen & Holtz, LLP v. Mirabils Ventures, Inc. (In re Mirabilis Ventures, Inc.), Nos. 6:08-bk-04237-KSJ, *et al.*, 2010 WL 1644915, at *3, 6 (M.D. Fla. Apr. 21, 2010) (affirming Bankruptcy Court order where creditors failed to establish a basis for dismissal of debtors' bankruptcy cases).

Plaintiff, as the moving party, has the burden of proof on his action for injunctive relief. Intergraph Corp. v. Intel Corp., 195 F.3d 1346, 1351 (11th Cir. 1999). Plaintiff

---

[61] The defendants appealed the decision on September 8, 2010. The appeal was withdrawn on September 22, 2010 pursuant to the parties' settlement agreement.

must establish:  (i) a substantial likelihood he will ultimately prevail on the merits; (ii) he will suffer irreparable injury unless the injunction issues; (iii) the threatened injury to him outweighs whatever damage the proposed injunction may cause the opposing party; and (iv) the injunction, if issued, would not be adverse to the public interest.  Zardui-Quintana v. Richard, 768 F.2d 1213, 1216 (11th Cir. 1985).  Plaintiff must convince the Court that all four prerequisites are satisfied.  United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983).  Section 105 of the Bankruptcy Code allows a bankruptcy court to issue injunctions.  11 U.S.C. § 105(a).

### Analysis

"A Chapter 11 petition may be properly filed only by those with the authority to do so."  In re Mirabilis Ventures, Inc., 2010 WL 1644915, at *2.  The determination of whether the filing of a bankruptcy petition by an entity was properly authorized involves an analysis of relevant state law and the filing entity's governing documents (articles of incorporation, by-laws, operating agreements, etc.).  Id.

Each Debtor in this proceeding is governed by written organizational documents including:  Articles of Incorporation, Articles of Organization, By-Laws, Operating Agreements, and Partnership Agreements.[62]  Those documents are valid and enforceable.  The Debtors' organizational documents provide for Jared to have the sole and exclusive power and authority to act on behalf of the Debtors, until such time as he is removed or replaced by a unanimous written vote of all owners and managers.  He has not been removed or replaced from any positions he holds in the Debtors.

---

[62] Ds' Exs. 2-37.

The Debtors were formed in various states and the laws of those states are relevant and controlling, including the laws of Florida, Colorado, Nevada, New Jersey, and Hawaii.

*Existence of Trusts:*  Plaintiff asserts no trusts exist because no written trust instrument was presented.  Florida statutory and case law provide a trust instrument is not required for a trust to exist: "[A] trust need not be evidenced by a trust instrument but the creation of an oral trust and its terms may be established only by clear and convincing evidence."  FLA. STAT. § 736.0407; In re The Estate of Rosa Lee Pearce, 48-1 So.2d 69, 71 (Fla. 4th DCA 1986).  Clear and convincing documentary evidence was presented establishing the Trusts were created in 2003 and existed from 2003 onwards with Plaintiff as the sole Trustee of each Trust.

*Florida LLCs:*  Florida statutory law provides a written operating agreement governs the affairs of a limited liability company and takes precedence over any oral agreements and the Florida Limited Liability Company Act, except to the extent it violates any provision of Section 608.423(2) of the Florida Statutes.  FLA. STAT. § 608.423(1).  Where an operating agreement does not exist for an entity, Section 608.404 is controlling and sets forth the entity's powers.  FLA. STAT. § 608.404.

An operating agreement may be entered into before, after, or at the time of filing of articles of organization.  FLA. STAT. § 608.423(1).  The operating agreement may be entered into by the entities' members before, after, or at the time of filing the articles of organization.  Id.  "[T]he operating agreement takes effect on the date of the formation of the limited liability company or on any other date provided in the operating agreement."  Id.

22

The documentary evidence establishes the ownership and management of the Florida limited liability companies.[63]  No provisions of any Operating Agreements violate any provision of Fla. Stat. Section 608.423(2).  Plaintiff has failed to present any evidence sufficient to overcome the written operating agreements. Plaintiff does not own or control any of the Debtors which are Florida limited liability companies.  Jared owns these entities.

*Colorado, New Jersey, and Hawaii LLCs:*  Colorado, New Jersey, and Hawaii have statutory provisions similar to Florida's statutory provisions regarding limited liability companies.  Their statutes provide a written operating agreement governs the affairs of a limited liability company and takes precedence over any oral agreements and the Uniform Limited Liability Company Act, except to the extent it violates any provision of such state statute.[64]

The documentary evidence establishes the ownership and management of the Colorado, New Jersey, and Hawaii limited liability companies.[65]  Plaintiff has failed to present any evidence sufficient to overcome the written operating agreements.  Plaintiff does not own or control any of the Debtors which are Colorado, New Jersey, or Hawaii limited liability companies.  Jared owns these entities.

*Nevada:*  The affairs of a Nevada limited liability company are governed by a written operating agreement, where one exists.  NEV. REV. STAT. § 86.286(1) (2001).  Any such agreement takes precedence over any oral agreements and the Nevada Limited

---

[63] Ds' Ex. 31, 11, 12, 32, 3, 5, 6, 7, 13, 17, 23, 24, 34, 26, 35, 28, 33.

[64] The relevant corresponding provisions of Colorado, New Jersey, and Hawaii law are as follows:  COLO. REV. STAT. § 80.108; N.J. STAT. ANN. § 42:2B-18; HAW. REV. STAT. § 428.103(b).

[65] Ds' Exs. 2, 4, 9, 10, 14, 18, 22, 25.

Liability Company Act, except to the extent the agreement violates any provision of Section 86.286(7). NEV. REV. STAT. § 86.286. An operating agreement may be adopted before, after or at the time of filing of the articles of organization. NEV. REV. STAT. § 86.286(2). It may become effective at the formation of the entity or at a later date specified in the operating agreement. Id.

The affairs of a Nevada partnership are governed by a written partnership agreement, where one exists. NEV. REV. STAT. § 87A.190(1) (2001). Any such agreement takes precedence over any oral agreements and the Nevada Uniform Limited Partnership Act, except to the extent the agreement violates any provision of Section 87A.190(2). NEV. REV. STAT. § 87A.190.

The documentary evidence establishes the ownership and management of the Nevada limited liability companies and the Nevada limited partnership (Celebrity Resorts International, LP).[66] Plaintiff's contention the organizational documents are invalid or without effect because they were executed after the LLCs and the partnership were formed is without merit. Plaintiff has failed to present any evidence sufficient to overcome either the written operating agreements or the written partnership agreement.

Plaintiff has not established the January 5, 2009 Capital Calls or the May 26, 2009 Subscription Agreement violated either the CRI Agreement of Limited Partnership or CRIMS' Operating Agreement. The Capital Calls and the Subscription Agreement were conducted in conformity with and pursuant to the Operating Agreement and the Agreement of Limited Partnership, which are valid, enforceable agreements governing the affairs of CRIMS and CRI. Jared, as the end result of the Capital Calls and

---

[66] Ds' Exs. 8, 15, 16, 19, 20, 21, 37, 36.

Subscription Agreement, gained 100% ownership of CRIMS and 99.732% ownership of CRI; he controlled both these entities

Plaintiff does not own or control any of the Debtors which are Nevada limited liability companies or Nevada limited partnerships.

### Conforming the Pleadings

Defendant, at the opening of the trial, challenged Plaintiff's standing to seek declaratory and injunctive relief individually.[67] The Plaintiff has asserted in various pleadings FCC is the owner of the Debtors, but made no response and called his first witness.[68]

Plaintiff, at the conclusion of the two-day trial, addressed the issue. It is unclear whether Plaintiff made an *ore tenus* motion to conform his pleadings to the evidence to add or substitute FCC as a party and the Defendant objected.[69] Plaintiff, to the extent he made a motion to conform his pleadings to the evidence, such motion is due to be denied.

Federal Rule of Civil Procedure 15(b), applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7015, governs the amendment of pleadings during and after trial. Plaintiff's motion is untimely and granting it would be unfairly prejudicial to Defendants. The motion does not meet the standards of Rule 15.

---

[67] Dec. 2, 2010 Hr'g Tr. vol. I, p. 7.

[68] Dec. 2, 2010 Hr'g Tr. vol. I, pp. 8-9.

[69] Dec. 3, 2010 Hr'g Tr. vol. II, pp. 85-86.

*Conclusion*

Plaintiff has not carried his burdens. He has not established he is entitled to declaratory relief or to the imposition of an injunction. Plaintiff did not own or control any of the Debtors on the Petition Date. Jared owned and controlled the Debtors. He was authorized to file bankruptcy petitions for the Debtors. All relief sought in the First Amended Complaint is due to be denied. Judgment is due to be entered in favor of Jared and against Plaintiff on the First Amended Complaint.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that any motion made by Plaintiff to conform the pleadings to the evidence is hereby **DENIED**; and it is further

**ORDERED, ADJUDGED and DECREED** that the relief sought in the First Amended Complaint (Doc. No. 3) is hereby **DENIED**.

A separate Judgment consistent with these findings and conclusions shall be entered contemporaneously.

Dated this \17\textsuperscript{th} day of December, 2010.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge

26